```
UNITED STATES DISTRICT COURT
     DISTRICT OF MINNESOTA
```

| | |
|---|---|
| FAYSAL HALIYE, BURHAN ABDI, ABSHIR ADEN, ABDIRAHMAN AHMED, KALID AHMED, MOHAMED AHMED, SULEYMAN ARAB, LIBAN ARTAN, BAZI SHEIKH BIN-SHEIKH, ABDULKADIR ELMI, AHMED ELMI, ADIL GATUR, AHMED HASSAN, AMIN HASSEN, HUSSEIN JAMA, ABDULKADIR MATAN, BURHAN MOHAMUD, FOZI MUSTAPHA, ZABITI OMER, IBRAHIM ROBLE, and ZEINAB YUSEF,<br><br>     Plaintiffs,<br><br>v.<br><br>CELESTICA CORPORATION and ADECCO USA, INC.,<br><br>     Defendants. | Case No. 06-CV-4769 (PJS/JJG)<br><br><br><br><br>ORDER |

James H. Kaster, David E. Schlesinger, and Megan I. Brennan, NICHOLS KASTER, PLLP, for plaintiffs.

Erika N.D. Stanat, Lucinda Odell Lapoff, and Jeffrey J. Calabrese, HARTER SECREST & EMERY LLP; and Frederick W. Vogt, MACKALL, CROUNSE & MOORE, PLC, for defendant Celestica Corporation.

Bruce J. Douglas and Carrie L. Zochert, LARKIN, HOFFMAN, DALY & LINDGREN, for defendant Adecco USA, Inc.

Plaintiffs are former employees of defendants Celestica Corporation ("Celestica") and Adecco USA, Inc. ("Adecco") (a temporary-employment agency) who worked at Celestica's manufacturing plant in Arden Hills, Minnesota. Plaintiffs are all practicing Muslims who allege that defendants discriminated against them on the basis of their religion and failed to accommodate their religious duty to pray five times each day. Plaintiffs bring this action under

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. §§ 363A.01 et seq.[1]

This matter is before the Court on defendants' motion for summary judgment. Defendants move for summary judgment on numerous grounds, including that some plaintiffs failed to notify defendants of a conflict between their religious obligations and their work duties; that some plaintiffs did not suffer an adverse employment action; and that, by offering every plaintiff the opportunity to transfer to a different shift, defendants provided a reasonable accommodation. The Court held a lengthy hearing on defendants' motion on March 19, 2010. As the Court noted at that hearing, defendants have properly moved for summary judgment only on plaintiffs' reasonable-accommodation claims, and not on plaintiffs' disparate-treatment claims. Thus, this case would have to be tried even if the Court granted defendants' summary-judgment motion.

The Court will not grant defendants' summary-judgment motion, though. As the Court explained at the hearing, disputes of fact preclude summary judgment on the issues of notice and adverse action (with one exception[2]). The Court also finds that disputes of fact preclude

---

[1] Both sides treat plaintiffs' MHRA claims as identical to plaintiffs' Title VII claims. The Court follows suit.

[2] The exception is plaintiff Zabiti Omer. The only adverse action suffered by Omer was a warning. As the Court explained at oral argument, although the standard for adverse action in the reasonable-accommodation context may be somewhat lower than the standard applicable in traditional employment-discrimination cases, the Court does not believe that a warning alone, without any other type of adverse action, qualifies as an adverse action in the reasonable-accommodation context.

Omer was later discharged, but there is no evidence that the reason given for her discharge — that she had reached the 18-month cap on temporary employment without securing
(continued...)

summary judgment on the issue of the reasonableness of defendants' proffered accommodations. The Court writes this short opinion to clarify why it believes that the issue of reasonableness is for the jury in this case. The Court also describes what factors the jury will be permitted to consider in making its determination. This guidance is necessary because, at oral argument, it became apparent that the parties dispute what factors the Court (at summary judgment) or the jury (at trial) may consider when deciding whether an employer has reasonably accommodated an employee's religious practices. Finally, the Court addresses the parties' arguments regarding the issue of Adecco's liability and the issue of punitive damages.

## A. Reasonable Accommodation

At oral argument, defendants insisted that, in determining whether an accommodation is reasonable, the *only* factor that a court or jury may consider is the extent to which the employee's religious conflict was resolved by the accommodation. Defendants further argued that, because they offered to fully accommodate every plaintiff's religious needs by transferring them to the first shift, plaintiffs' claims necessarily fail as a matter of law. *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) ("where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end").

---

²(...continued)
a permanent position — was pretextual. As a result, Omer cannot show that she suffered an adverse action because she took unauthorized breaks to pray. *See Jackson v. United Parcel Serv., Inc.*, 548 F.3d 1137, 1140 (8th Cir. 2008) (prima facie case of disparate treatment requires proof that plaintiff suffered an adverse employment action); *Jones v. TEK Indus., Inc.*, 319 F.3d 355, 359 (8th Cir. 2003) (prima facie case of failure to accommodate requires proof that plaintiff was disciplined for failing to comply with a conflicting employment requirement). The Court therefore grants defendants' motion with respect to Omer.

There are several problems with defendants' argument. First, the argument rests on the assumption that a transfer to the first shift would, in fact, have fully resolved each plaintiff's religious conflict. Although it is true that no first-shift employee has joined this lawsuit, the record suggests that the practicing Muslims who work on the first shift generally believe that the windows of time during which prayers may be performed are fairly large. *See* Defs.' Ex. 2 (listing windows between one and four hours long for the various prayers). As defendants themselves persuasively argued when opposing plaintiffs' motion for class certification, plaintiffs vary considerably in their beliefs concerning the required timing of their prayers. Many plaintiffs believe that prayers must be performed either at a precise time or within a very small window of time — a belief that may not be shared by the Muslims working on the first shift. Given the variance in the religious beliefs at issue in this case, the Court cannot conclude that, because the first-shift employees may be satisfied with their schedule, an offer to transfer to the first shift would have fully resolved the religious conflict for each of the plaintiffs in this lawsuit.

The Court stresses that it is not holding that the defendants were *required* to offer an accommodation that fully resolved plaintiffs' religious conflicts. *See Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024, 1030-31 (8th Cir. 2008) (rejecting argument that an accommodation is unreasonable as a matter of law unless it eliminates the conflict). The Court is merely responding to defendants' argument that they *did* offer an accommodation that fully resolved plaintiffs' religious conflicts. That is a disputed issue of fact, and thus defendants' motion for summary judgment must be denied. *See Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1156 (10th Cir. 2000) (after a plaintiff establishes a prima facie case, the burden shifts to the employer to show that it either offered a reasonable accommodation or was unable to do so

without undue hardship); *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1576 (7th Cir. 1997) ("The burden of making a reasonable accommodation or of showing that any accommodation would result in undue hardship lies with the employer."); *see also Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000) (per curiam) ("Once a plaintiff establishes a prima facie case, the burden shifts to the employer to show that accommodation would result in undue hardship to the employer.").

The second problem with defendants' argument is that they misstate the law. That should be obvious, as the legal rule urged by defendants is utterly illogical. Again, defendants argue that the *only* thing that may be considered in deciding whether an accommodation is reasonable is the extent to which the accommodation resolves the religious conflict. Suppose, then, that in a particular case, the court found that an accommodation resolved 30 percent of the conflict. How could the court possibly decide whether 30 percent was "reasonable" if the court could look at nothing except the fact that 30 percent of the conflict was resolved? Defendants have no answer.

Moreover, the legal rule urged by defendants is irreconcilable with Eighth Circuit precedent. As noted, the Eighth Circuit has made clear that an accommodation may be reasonable notwithstanding the fact that it does not completely eliminate the employee's religious conflict. *Sturgill*, 512 F.3d at 1030-31. At the same time, however, the Eighth Circuit expressly declined to hold that employers are *never* required to eliminate their employees' religious conflicts. *Id.* at 1030. Instead, the Eighth Circuit explained that "[w]hat is reasonable depends on the totality of the circumstances and therefore might, or might not, require elimination of a particular, fact-specific conflict." *Id.* at 1030. The Eighth Circuit later reiterated the point: "[T]here may be many situations in which the only reasonable accommodation is to eliminate the

religious conflict altogether." *Id.* at 1033. Given that total elimination of the conflict is required in some circumstances and not in others, the reasonableness of an accommodation *must* depend in part on factors other than the extent to which the accommodation resolves the conflict.

The final, and most important, problem with defendants' argument is that it is contrary to what appears to be the unanimous weight of authority that the reasonableness of any given accommodation is a fact-intensive inquiry that depends on the totality of the circumstances. In *Sturgill*, the Eighth Circuit made this clear:

> [I]n close cases, [reasonableness] is a question for the jury because it turns on fact-intensive issues such as work demands, the strength and nature of the employee's religious conviction, the terms of an applicable CBA, and the contractual rights and workplace attitudes of co-workers. Bilateral cooperation under Title VII requires employers to make serious efforts to accommodate a conflict between work demands and an employee's sincere religious beliefs. But it also requires accommodation by the employee, and a reasonable jury may find in many circumstances that the employee must either compromise a religious observance or practice, or accept a less desirable job or less favorable working conditions.

*Sturgill*, 512 F.3d at 1033. *See also id.* at 1030 ("[w]hat is reasonable depends on the totality of the circumstances").

Many other cases illustrate the point that "totality of the circumstances" means "totality of the circumstances." *See Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1321 (11th Cir. 2007) ("'Each case involving [a reasonable accommodation] determination necessarily depends upon its own facts and circumstances, and comes down to a determination of "reasonableness" under the unique circumstances of the individual employer-employee relationship'" (quoting *Redmond v. GAF Corp.*, 574 F.2d 897, 902-03 (7th Cir. 1978))); *Rodriguez v. City of Chicago*, 156 F.3d 771, 776 n.7 (7th Cir. 1998) ("The determination of

whether an accommodation is reasonable in a particular case must be made in the context of the unique facts and circumstances of that case. "); *Beadle v. City of Tampa*, 42 F.3d 633, 636 (11th Cir. 1995) ("'[e]ach case necessarily depends upon its own facts and circumstances, and in a sense every case boils down to a determination as to whether the employer has acted reasonably'" (quoting *United States v. City of Albuquerque*, 545 F.2d 110, 114 (10th Cir. 1976))); *EEOC v. Universal Mfg. Corp.*, 914 F.2d 71, 73 (5th Cir. 1990) (per curiam) ("We need not embark on a long discussion of what is or is not 'reasonable' accommodation. Ordinarily, questions of reasonableness are best left to the fact finder."); *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987) ("The reasonableness of an employer's attempt at accommodation cannot be determined in a vacuum. Instead, it must be determined on a case-by-case basis; what may be a reasonable accommodation for one employee may not be reasonable for another.").

This is not to say that there are no bright-line rules for determining whether a given accommodation is reasonable. For example, an employer is not required to deprive other employees of their contractual rights in order to accommodate an employee's religious needs. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 81 (1977). Moreover, an employer is required to offer *a* reasonable accommodation, not the accommodation preferred by the employee. Thus, if the employer has offered one reasonable accommodation, the employee cannot insist on a different reasonable accommodation, even if the preferred accommodation would not inflict undue hardship on the employer. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68-69 (1986).

For the most part, though, reasonableness is a matter of degree. For example, an accommodation may be reasonable even though it imposes some costs on the employee. *See*

*Sturgill*, 512 F.3d at 1033 ("[Title VII] also requires accommodation by the employee, and a reasonable jury may find in many circumstances that the employee must either compromise a religious observance or practice, or accept a less desirable job or less favorable working conditions"); *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 225 (3d Cir. 2000) ("a sufficient religious accommodation need not be the 'most' reasonable one (in the employee's view), it need not be the one the employee suggests or prefers, and it need not be the one that least burdens the employee"); *Eversley v. MBank Dallas*, 843 F.2d 172, 176 (5th Cir. 1988) ("simply because the proposed accommodation would involve some cost to the employee does not make it unreasonable"). At the same time, the extent of and justification for the costs imposed on the employee are relevant to the reasonableness of the employer's efforts to accommodate. *Cosme v. Henderson*, 287 F.3d 152, 160 (2d Cir. 2002) ("an accommodation might be unreasonable if it imposes a significant work-related burden on the employee without justification"); *Shelton*, 223 F.3d at 227-28 (finding offer to transfer reasonable because it would not have affected the plaintiff's pay or benefits and would not have been "burdensome"); *Rodriguez v. City of Chicago*, 156 F.3d 771, 776 (7th Cir. 1998) (finding offer to transfer reasonable because it would not have affected the plaintiff's pay or benefits); *Wright v. Runyon*, 2 F.3d 214, 217 (7th Cir. 1993) (noting that whether an employee is asked to take an unskilled position or a cut in pay or benefits is relevant to the issue of reasonableness); *see also Universal Mfg. Corp.*, 914 F.2d at 73 (stating that Title VII protects employees by requiring that the offered accommodation be "reasonable").[3]

---

[3]Although there does not seem to be any case law directly discussing the issue, it is likely that only *work*-related costs to the employee are relevant. *See Cosme*, 287 F.3d at 160 ("an
(continued...)

Similarly, although it is true that "[r]easonableness and the avoidance of undue hardship are distinct," *Endres v. Indiana State Police*, 349 F.3d 922, 925 (7th Cir. 2003), the factors relevant to each inquiry overlap to a significant extent, *id.* ("Selective objection to some of the employer's goals raises problems on the 'reasonableness' branch as well as the 'undue hardship' branch."). *See also EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 314 (4th Cir. 2008) ("Although we hold the 'reasonably accommodate' and 'undue hardship' inquiries to be separate and distinct, this does not mean they are not interrelated. Indeed, there is much overlap between the two."). Thus, while the cost to the employer is obviously relevant to the undue-hardship inquiry, it is also relevant to the reasonableness inquiry. *Firestone Fibers*, 515 F.3d at 314

---

[3](...continued)
accommodation might be unreasonable if it imposes a significant *work-related* burden on the employee without justification" (emphasis added)). So, for example, if an employee is offered a transfer to a morning shift, it is probably not relevant that the employee might prefer, for personal reasons, to work in the afternoon. It is worth noting that this seems to be the position taken in the EEOC's own guideline on reasonable accommodation. *See* 29 C.F.R. § 1605.2(c)(2)(ii) ("when there is more than one means of accommodation which would not cause undue hardship, the employer or labor organization must offer the alternative which least disadvantages the individual *with respect to his or her employment opportunities*" (emphasis added)). The Court is aware that the Supreme Court, in *Philbrook*, declined to give any weight to this guideline to the extent that it requires an employer to accept the employee's preferred accommodation. *Philbrook*, 479 U.S. at 69 n.6. But *Philbrook* did not seem to quarrel with the principle that costs imposed on the employee are relevant only to the extent that they are work-related; in fact, the Court noted that the court of appeals had ignored this "significant limitation" in the guideline. *Id.*

Nevertheless, the Court is reluctant to say that personal hardships imposed as a result of the employer's proposed accommodation can never be relevant. One might imagine an extreme case in which there are two possible accommodations, neither of which would impose any cost whatsoever on the employer, but one of which would inflict such drastic personal hardship on the employee that the employee could not possibly accept it. In such a case, the employer's decision to offer the accommodation that inflicts drastic personal hardship — with no corresponding benefit to the employer — would not seem "reasonable." But this case does not appear to present such a decision by an employer, and thus the Court need not resolve this issue.

("Considering an accommodation's impact on both the employer and coworkers . . . is appropriate when determining its reasonableness"); *Universal Mfg. Corp.*, 914 F.2d at 73 n.3 ("Reasonableness seems to focus more upon the cost to the employer, the extent of positive involvement which the employer must exercise, and the existence of overt discrimination by the employer.").

The reasonableness of any accommodation also depends on the nature of the employee's religious beliefs and how they conflict with the employee's work duties. For example, when an employee has a religious objection to performing one or more of her job duties, the employer may have to offer very little in the way of an accommodation — perhaps nothing more than a limited opportunity to apply for another position within the organization. *See Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 495, 500-02 (5th Cir. 2001) (finding that an offer of thirty days to find another job in the organization with the assistance of an in-house employment counselor was sufficient where, "unlike traditional requests for religious accommodation which merely seek to rearrange an employee's schedule, Bruff determined that she would not perform some aspects of the position itself").

Even the bright-line rule of *Philbrook* — that an employer who has offered a reasonable accommodation need not prove that the employee's preferred accommodation would cause an undue hardship — does not mean that the existence of available alternative accommodations is irrelevant in the reasonableness inquiry. *See Firestone Fibers*, 515 F.3d at 314 (although an employer is not bound to offer the most favorable accommodation, "the failure to consider alternative accommodations that pose no undue hardship may, generally speaking, influence the determination of whether an employer's offered accommodation was reasonable"). Indeed,

*Philbrook* itself teaches that an accommodation that would ordinarily be considered reasonable may not be considered reasonable when the employer withholds a more favorable accommodation for discriminatory reasons. *Philbrook*, 479 U.S. at 70-71 (noting that while unpaid leave for religious holidays would generally be reasonable, "unpaid leave is not a reasonable accommodation when paid leave is provided for all purposes *except* religious ones. . . . [s]uch an arrangement would display a discrimination against religious practices that is the antithesis of reasonableness").

In this case, plaintiffs have offered evidence that defendants generally permitted employees to take unscheduled breaks for personal reasons (such as to use the bathroom), but did not permit plaintiffs to take unscheduled breaks to pray. As the Court explained at oral argument, the Court has its doubts that plaintiffs are similarly situated to employees who take occasional breaks to use the bathroom. But defendants have essentially ignored this aspect of plaintiffs' claims and thus the Court is not in a position to find that defendants acted reasonably as a matter of law in denying unscheduled breaks for prayer when it permitted unscheduled breaks for other reasons. *Cf. Universal Mfg. Co.*, 914 F.2d at 74 ("Permitting an employer to discriminate, under the guise of reasonableness, between which religious conflicts that employer will or will not accommodate . . . would utterly eradicate Title VII's protection against religious discrimination.").

As all of this case law demonstrates, what is "reasonable" is difficult to boil down to a set formula. Instead, the determination of reasonableness is quintessentially a fact-bound inquiry that depends on the unique circumstances of each case. The Court therefore rejects defendants' argument that the only relevant consideration is the extent to which an accommodation resolves

an employee's religious conflict. That is clearly not the law. The Court further finds that, in light of the many facts that remain in dispute, the issue of reasonable accommodation is best left for the jury.[4]

## B. Adecco

Defendants also contend that Adecco, which is a temporary-employment agency, is entitled to summary judgment because it provided to those plaintiffs who were assigned to Celestica an opportunity to request assignment to a different Adecco client. *Cf. EEOC v. Kelly Servs., Inc.*, 598 F.3d 1022, 1031 n.8 (8th Cir. 2010) ("Even if the statute requires employment agencies themselves to 'reasonably accommodate' a plaintiff in the referral process, we note that Kelly did so by offering Suliman at least seven alternative positions.").[5] Plaintiffs disagree, arguing that (1) Adecco is a joint employer with Celestica and therefore bears equal responsibility for Celestica's alleged failure to accommodate; and (2) the mere opportunity to

---

[4]The Court acknowledges that, in its discussion of the factors a jury may consider in deciding whether an accommodation is reasonable, the Court has relied on several cases that *Sturgill* cited with disapproval. *See Sturgill*, 512 F.3d at 1032-33 (declining to follow *Cosme v. Henderson*, 287 F.3d 152 (2d Cir. 2002), *Wright v. Runyon*, 2 F.3d 214 (7th Cir. 1993), and *Smith v. Pyro Mining Co.*, 827 F.2d 1081 (6th Cir. 1987)). As noted, however, the issue in *Sturgill* was whether an employer must, absent undue hardship, completely *eliminate* an employee's religious conflict — an issue on which there is currently a division of authority. *Sturgill* declined to follow *Wright*, *Cosme*, and *Smith* insofar as they held that total elimination is required. *Sturgill*, 512 F.3d at 1032-33. But *Wright*, *Cosme*, and *Smith* are in harmony with *Sturgill* to the extent that they — like every other case that the Court has reviewed — follow the principle that the reasonableness of an accommodation is determined by considering the totality of the circumstances.

[5]*Kelly Services*, which was issued after oral argument on defendants' motion, seems to suggest that a temporary-employment agency may not have any duty to offer an accommodation when the conflict is between the worker's religious practices and the duties imposed by the third-party employer. In this case, however, Adecco has not disputed that it has a duty to accommodate.

seek other jobs is not a reasonable accommodation. At a minimum, plaintiffs contend, Adecco should have given each plaintiff a firm offer of another job.

Ordinarily, the Court would agree that a temporary-employment agency's offer to help place a worker with another employer would be a reasonable accommodation. *Cf. Bruff*, 244 F.3d at 500-02 (finding that an offer of thirty days to find another job in the organization with the assistance of an in-house employment counselor was a reasonable accommodation under the circumstances); *Kelly Servs.*, 598 F.3d at 1031 n.8 (citing *Bruff* favorably). After all, there is not much more that a typical temporary-employment agency can do. If such an agency had to offer an actual assignment in order to accommodate an employee, the agency's liability would turn, not on its own conduct, but on the availability of comparable alternative jobs — something over which the agency would have no control.

Plaintiffs' contention that Adecco and Celestica are joint employers, however, prevents the Court from finding as a matter of law that Adecco's offer, standing alone, was a reasonable accommodation. Although the Court is skeptical that an employer and a temporary agency can be considered joint employers, defendants have not addressed this allegation in their motion for summary judgment. In fact, defendants' briefs at times read as though they concede that Adecco did have some control over the accommodations offered by Celestica. *See* Docket No. 85 at 19-20, 22 (describing how "Celestica and Adecco" implemented a series of accommodations). The Court cannot find, based on the record as it now stands, that Adecco could do nothing to accommodate plaintiffs other than to offer help in finding another assignment. Defendants' motion is therefore denied to the extent that it seeks summary judgment in Adecco's favor on the issue of reasonable accommodation.

### C. Punitive Damages

Finally, defendants move for summary judgment on plaintiffs' claim for punitive damages. Punitive damages are available in a Title VII action when the employer engaged in intentional discrimination "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). This standard requires a showing that the employer "at least discriminate[d] in the face of a perceived risk that its actions [would] violate federal law . . . ." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999). "While egregious misconduct is evidence of the requisite mental state, . . . § 1981a does not limit plaintiffs to this form of evidence, and the section does not require a showing of egregious or outrageous discrimination independent of the employer's state of mind." *Id.* at 535. But an employer will not be liable for punitive damages when the discriminatory actions of its managers were contrary to the employer's good-faith efforts to comply with Title VII. *Id.* at 545.

Based on what the Court knows of the facts, the Court doubts that defendants can be held liable for punitive damages. *See Sturgill*, 512 F.3d at 1035 ("plaintiffs face a formidable burden when seeking punitive damages for employment discrimination" (citation and quotations omitted)). But the Court hesitates to grant summary judgment to defendants on the issue of punitive damages because, as noted, defendants have essentially ignored plaintiffs' evidence regarding intentional discrimination and have not properly briefed plaintiffs' disparate-treatment claims. For these reasons, the Court will deny defendants' summary-judgment motion and invite defendants to move for judgment as a matter of law on this issue after plaintiffs have presented their evidence at trial.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motion for summary judgment [Docket No. 78] is GRANTED IN PART and DENIED IN PART.

2. Defendants' motion is GRANTED with respect to all of plaintiff Zabiti Omer's claims, and these claims are DISMISSED WITH PREJUDICE AND ON THE MERITS.

3. Defendants' motion is DENIED in all other respects.

Dated: June 10, 2010                    s/Patrick J. Schiltz
                                        Patrick J. Schiltz
                                        United States District Judge